O

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZOLL CIRCULATION, INC., ) | CASE NO. SACV 10-01010 AG (RNBx) |
| ) | |
| Plaintiff, ) | ORDER GRANTING IN PART AND |
| ) | DENYING IN PART MOTION FOR |
| v. ) | PRELIMINARY INJUNCTION |
| ) | |
| ELAN MEDIZINTECHNIK, GMBH, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| _____ ) | |

        In this case, a formerly licensed distributor is allegedly still distributing.  Plaintiff Zoll

Circulation, Inc. ("Plaintiff") filed this Motion for a Preliminary Injunction ("Motion").  Plaintiff

asks the Court to enjoin Defendant ELan Medizintechnik GmbH ("Defendant") from (1)

representing itself as a distributor of Plaintiff's products in certain countries, (2) contacting

Plaintiff's customers in those countries about the products, and (3) making false, misleading, or

defamatory statements about Plaintiff and Plaintiff's products until the resolution of a pending

arbitration.

1    Plaintiff requested an expedited hearing on this Motion.  After ensuring that Defendant

2    received notice of this Motion, the Court granted Plaintiff's request.  The Court adopted

3    Plaintiff's proposed expedited briefing schedule where Defendant would have a chance to file an

4    opposition, but Plaintiff would not file a reply.  No opposition has been filed.

5    After reviewing all papers and arguments submitted, the Court GRANTS IN PART and

6    DENIES IN PART the Motion.

7

8    **BACKGROUND AND FINDINGS**

9

10    Plaintiff offers evidence seeking to support the following facts.

11    Plaintiff manufactures "temperature management technology" and related products.

12    (Declaration of James Palazzolo ("Palazzolo Decl.") ¶ 3.)  James Palazzolo ("Palazzolo") is

13    Plaintiff's president.  (Palazzolo Decl. ¶¶ 1-2.)  Plaintiff's products are designed for "controlling

14    [the] core body temperature of critically ill or surgical patients . . . ."  (Palazzolo Decl. ¶ 4.)

15    On May 1, 2007, Alsius Corporation ("Alsius") entered into a three-year distribution

16    agreement (the "Agreement") with Defendant that made Defendant the exclusive distributor for

17    Alsius' temperature control products in Germany, Austria, Czech Republic, Slovakia, and

18    Slovenia (the "Territory").  (Palazzolo Decl. ¶ 6.)  In May 2009, Plaintiff acquired "substantially

19    all" of Alsius, including its products and rights and obligations under the Agreement.  (Palazzolo

20    Decl. ¶ 7.)  In late February 2010, Plaintiff informed Defendant that Plaintiff would not renew

21    the Agreement upon its expiration on April 30, 2010.  *Id.*

22    Since the expiration of the Agreement, Defendant has "continued to hold itself out as

23    [Plaintiff's] distributor in the territory, and has been making false and misleading statements to

24    [Plaintiff's] customers that . . . have caused them [to refuse to] order" products from Plaintiff.

25    (Palazzolo Decl. ¶¶ 15, 17.)  On June 18, 2010, Defendant sent a letter (the "June 18 letter") to

26    its customers stating that Plaintiff had "'terminated' [Defendant] and refuse[d] to 'pay any

27    compensation.'"  (Palazzolo Decl. ¶ 19.)  Plaintiff has received numerous calls and emails from

28    "irate and confused" customers due to Defendant's June 18 letter.   (Palazzolo Decl. ¶ 20.)

2

Palazzolo also contacted customers who purchased Plaintiff's products in the past through Defendant and were unwilling to purchase the products directly from Plaintiff.  (Palazzolo Decl. ¶¶ 21-26.)  Some of these customers stated their intent to continue to buy Plaintiff's products from Defendant.  *Id.*

Plaintiff estimates it has lost over $237,600 in orders by "customers [that] would have ordinarily been submitted to [Plaintiff] if [Defendant] had not made false representations." (Palazzolo Decl. ¶¶ 27- 28.)  Plaintiff "competes with several . . . entities in the Territory," and Defendant's disruptive "conduct threatens to cause [Plaintiff] to lose customers" to these competitors.  (Palazzolo Decl. ¶ 29.)

Under the Agreement, the parties agreed to settle any disputes arising from their relationship "under the Rules of Conciliation and Arbitration of the International Chamber of Commerce." (Agreement § 15.4.2.)  The parties also agreed that "the place of the arbitration shall be in Orange County . . . ." *Id.*

On June 23, 2010, Defendant filed a lawsuit in a German court seeking an injunction directing Plaintiff's affiliates to continue supplying Defendant with Plaintiff's products, and related relief.  (Declaration of Suzanne Geraghty ("Geraghty Decl.") ¶ 3.)  On July 1, 2010, Plaintiff filed an arbitration demand with the International Chamber of Commerce.  (Geraghty Decl. ¶ 2.)  In the arbitration, Plaintiff asserts claims for breach of contract, tortious interference with contract and prospective business relationships, violations of the Lanham Act, and declaratory relief.  (Compl. ¶ 4, Ex. 2.)  Plaintiff now seeks to enjoin Defendant from certain conduct pending resolution of the arbitration.

**ANALYSIS AND CONCLUSIONS**

A preliminary injunction is a provisional remedy issued before final disposition of the litigation.  Its function is to preserve the status quo and prevent irreparable loss of rights before judgment. *Sierra On-Line, Inc. v. Phoenix Software, Inc.,* 739 F.2d 1415, 1422 (9th Cir. 1984).

1    It is a "drastic and extraordinary remedy that is not to be routinely granted." *Intel Corp. v. ULSI*

2    *Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993).

3         "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on

4    the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

5    balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v.*

6    *NRDC, Inc.*, 129 S. Ct. 365, 374 (2008).

7         "[A] district court may issue interim injunctive relief on arbitrable claims if interim relief

8    is necessary to preserve the status quo and the meaningfulness of the arbitration process-

9    provided, of course, that the requirements for granting injunctive relief are otherwise satisfied."

10   *Toyo Tire Holdings of Ams. Inc. v. Continental Tire N.A., Inc.*, -- F.3d -- , 2010 WL 2496133, at

11   *5, 2010 U.S. App. LEXIS 12475, at *14 (9th Cir. June 17, 2010).

12

13        **1.    LIKELIHOOD OF SUCCESS ON THE MERITS**

14

15        Recall that Plaintiff requests a preliminary injunction prohibiting Defendant from doing

16   three things:  (1) representing itself as a distributor of Plaintiff's products in certain countries, (2)

17   contacting Plaintiff's customers in those countries about the products, and (3) making false,

18   misleading, or defamatory statements about Plaintiff and Plaintiff's products until the resolution

19   of a pending arbitration.  Plaintiff shows that it is likely to succeed on its request that Defendant

20   stop representing itself as Plaintiff's distributor.  But Plaintiff fails to meet the likelihood of

21   success requirement on its requests to stop Defendant from contacting Plaintiff's customers or

22   making false, misleading, or defamatory statements about Plaintiff.

23        Plaintiff will likely succeed in showing that Defendant is not entitled to claim that it is

24   Plaintiff's distributor.  Under the evidence submitted, Defendant continues to represent itself as

25   Plaintiff's licensee despite the expiration of the Licensing Agreement.  There is no evidence that

26   Defendant has any right to continue claiming it is Plaintiff's distributor.  Moreover, Plaintiff

27   provided timely notice to Defendant of Plaintiff's intent not to renew the Agreement.  (Palazzolo

28   Decl. ¶ 8.)  Since the Agreement made Defendant Plaintiff's distributor in the Territory for only

4

a limited period, (*see* Agreement § 2.1), Defendant's representations of itself as a licensee after that period expired breach the Agreement.

But Plaintiff fails to show that it is entitled to an injunction prohibiting Defendant from contacting Plaintiff's customers in the Territory about the products.  Plaintiff's evidence on this point is a declaration stating that Defendant "has been making false and misleading statements to [Plaintiff's] customers]," (Palazzolo Decl. ¶ 16), including that Plaintiff "'terminated' [Defendant] and refuses to 'pay any compensation,'" (*id*. ¶ 19).  This evidence does not support granting Plaintiff's request for the broad injunctive relief of prohibiting Defendant from contacting Plaintiff's customers in certain countries.

It also does not support an injunction prohibiting Defendant from making false, misleading, or defamatory statements about Plaintiff.  Under Plaintiff's evidence, Defendant stated that Plaintiff "terminated" Defendant and refuses to "pay any compensation."  One way to interpret the facts is to say that Plaintiff did "terminate" the Agreement by declining to extend it.  And while Defendant's statement that Plaintiff is not "pay[ing] any compensation" may mislead some entities into believing Plaintiff owes Defendant money and is not paying, it is also literally true that Plaintiff is not actually paying Defendant any compensation.

In other words Defendant's statements are not clearly false or misleading.  At this point, the evidence does not show the type of false or misleading statements sufficient silence Defendant through a preliminary injunction.  This is especially true since there can be great disagreement over what is "misleading."

Accordingly, Plaintiff shows a likelihood of success on the merits concerning its request to enjoin Defendant from representing itself as Plaintiff's distributor, but not its other injunction requests.

## 2.    LIKELIHOOD OF IRREPARABLE HARM

Plaintiff gives three reasons why it will be irreparably harmed absent a preliminary injunction: customer confusion, loss of customer goodwill, and failure to conform to

1  manufacturer's standards.  (Plaintiff's Br. 3:22-26.)  The Court agrees that Plaintiff is likely to

2  suffer irreparable harm absent a preliminary injunction.

3

4        **2.1    Customer Confusion**

5

6        Courts have granted injunctive relief to prevent customer confusion in cases involving

7  former licensees who keep acting as licensees after the license has expired or been revoked.

8  "There is a compelling need for injunctive relief especially when the case involves a former

9  licensee because, after a license has been revoked, there is an increased danger that consumers

10  will be confused and believe that the former licensee is still an authorized representative of the

11  trademark holder."  *Sunward Electronics, Inc. v. McDonald*, 326 F.3d 17, 25 (2d Cir. 2004).

12  Moreover, "[o]nce the plaintiff establishes a likelihood of confusion, it is ordinarily presumed

13  that the plaintiff will suffer irreparable harm if injunctive relief is not granted."  *Vision Sports,*

14  *Inc. v. Melville Corp.*, 888 F.2d 609, 612 (9th Cir. 1989).

15        Plaintiff presents evidence of customer confusion resulting from Defendant's efforts to

16  market Plaintiff's products after the expiration of the Agreement.  Defendant continued to

17  market Plaintiff's products at trade shows and on its website.  (*See* Palazzolo Decl. ¶¶ 15-16.)

18  Defendant's efforts have resulted in confusion among Plaintiff's customer base.  Plaintiff's

19  customer service representative reports that "customers were confused as to whether [Plaintiff]

20  or [Defendant] was authorized to distribute [p]roducts in the Territory."  (Palazzolo Decl. ¶ 20.)

21  In his declaration, Palazzolo points to multiple conversations he had with individual customers

22  who still believed they would be able to supply their needs from Defendant.  (*See* Palazzolo

23  Decl. ¶¶23, 26.)  Under these facts, the Court finds that this customer confusion puts Plaintiff at

24  risk of losing its reputation, which "is the very thing that constitutes irreparable harm in the

25  licensing context."  *See Church of Scientology Intern. v. Elmira Mission of the Church of*

26  *Scientology*, 794 F.2d 38, 44 (2d Cir. 1986).  Although the existence of customer confusion

27  alone is sufficient for a finding of irreparable harm, the Court will examine the other bases for

28  Plaintiff's Motion.

## 2.2    Loss of Customer Goodwill

Besides creating customer confusion, Plaintiff asserts that Defendant's conduct after the expiration of the Agreement has generated a loss of customer goodwill.  "Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."  *Stuhlberg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001).

Here, Plaintiff has shown more than "a possibility" of irreparable harm due to a loss of customer goodwill, but an *actual* loss.  Customers have informed Palazzolo that after receiving Defendant's June 18 letter they would be unwilling to purchase from Plaintiff.  (Palazzolo Decl. ¶ 22.)  One customer told Palazzolo that based on the June 18 letter, the customer thought Plaintiff had treated Defendant unfairly and cancelled part of his order from Plaintiff as a result. (Palazzolo Decl. ¶ 24.)  Accordingly, the Court finds that Palazzolo's declaration concerning a loss of customer goodwill supports a finding of irreparable injury.  *See Gallagher Benefit Servs., Inc. v. De La Torre*, 283 F. App'x 543, 546 (9th Cir. 2008) (a company representative's declaration concerning loss of customer goodwill supports a finding of irreparable injury).

## 2.3    Failure to Conform to Manufacturer Standard

Finally, Plaintiff asserts that it is "entitled to control the manner in which its products are marketed, promoted, distributed and sold."  (Plaintiff's Br. ¶ 4:16-17.)  Courts have found that a failure to conform with a licensor's "standard operating procedures" could result in a loss of customers, and therefore may suffice to show irreparable harm.  *See Merle Norman Cosmetics, Inc. v. Martin*, 914 F.2d 263 (9th Cir. 1990) (finding a breach of operating procedures as a basis for customer loss); *see also Dunkin' Donuts, Inc. v. Albireh Donuts, Inc.*, 96 F.Supp.2d 146, 150-51 (finding that a sale of products that do not conform to plaintiff's specifications is likely to create confusion and damage to plaintiff's trade name).  As an unlicensed and unauthorized

distributor of Plaintiff's products, Defendant may be unable to provide the level of customer service necessary to maintain Plaintiff's reputation in the market.  Accordingly, the Court finds that the potential of failure to conform with Plaintiff's standards provides further grounds for finding a likelihood of irreparable injury.

### 3.    BALANCE OF EQUITIES

The third *Winter* element requires the Court to consider the balance of equities.  Here, the scale tilts heavily in Plaintiff's favor.  If the Court denied the requested injunction, under the evidence submitted, Defendant's conduct might result in further irreparable harm to Plaintiff's business reputation, customer base, and competitive position.  On the other hand, if the Court grants the injunction prohibiting Defendant from representing itself as Plaintiff's distributor, Defendant would only be enjoined from doing what it has no right to do in the first place.  As a result, the balance of equities favors Plaintiff.

### 4.    PUBLIC INTEREST

The public interest favors granting the parties what is rightfully theirs.  Here, Plaintiff has the right to be the exclusive distributor of its products, so the public interest favors an injunction that will promote that right, such as requiring Defendant to cease claiming it is Plaintiff's distributor.  Further, Plaintiff's products are medical devices used in hospitals to provide care to "critically ill or surgical patients."  (Palazzolo Decl. ¶ 4.)  A reliable supply chain of such products to hospitals and medical clinics is in the public interest.

Thus, Plaintiff meets the public interest requirement.

### **DISPOSITION**

The Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion.  Defendant

1 shall be preliminarily enjoined from claiming that it is Plaintiff's distributor after Plaintiff posts

2 a bond of $50,000.

3

4 IT IS SO ORDERED.

5 DATED: July 26, 2010

6 _____

7 Andrew J. Guilford
United States District Judge